**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **LON BURNAM,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:26-cv-1121** |
| | § | |
| **TIM O'HARE, in his individual capacity; and TARRANT COUNTY, TEXAS,** | § | |
| | § | |
| | § | |
| | § | |
| **Defendants.** | | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND**
**APPLICATION FOR PRELIMINARY INJUNCTION**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

NOW COMES Plaintiff Lon Burnam and files this Original Complaint under 42 U.S.C. §1983 against Defendant Tim O'Hare, in his individual capacity, and Defendant Tarrant County, Texas. Plaintiff seeks damages and declaratory and injunctive relief for the viewpoint-based termination of his recognized public-comment turn, his removal from an open Commissioners Court meeting, and the resulting criminal-trespass restrictions excluding him from future meetings. Plaintiff alleges as follows:

## I.
## NATURE OF THE ACTION

1. This civil-rights action concerns the use of governmental meeting authority to suppress criticism of the presiding official. Plaintiff was recognized to address a pending election-administration proposal, remained within his allotted time, and posed no threat. Defendant O'Hare nevertheless terminated Plaintiff's speaking turn and ordered him removed after Plaintiff criticized O'Hare and expressed solidarity with another speaker whom O'Hare had earlier removed.

2. O'Hare's removal order became the express predicate for a criminal-trespass warning that prohibited Plaintiff from attending future Commissioners Court meetings and substantially restricted his access to the County Administration Building. The warning converted the termination of one speaking turn into a prospective exclusion from County government.

3. Plaintiff does not presently allege that O'Hare expressly ordered sheriff's deputies to arrest or criminally charge him. Plaintiff's individual-capacity claim is based on O'Hare's own termination of Plaintiff's protected speech, his removal order, and the exclusionary consequences that the order directly caused or set in motion. Plaintiff's municipal-liability claim is based on the County's formally adopted meeting rules, the authority delegated for their enforcement, the recurring use of that authority against critical speakers, and the County's implementation and ratification of O'Hare's order through the subsequent warning.

## II.
## JURISDICTION AND VENUE

4. This action arises under 42 U.S.C. §1983 and the First and Fourteenth Amendments to the United States Constitution.

5. This Court has federal-question jurisdiction under 28 U.S.C. §§1331 and 1343(a)(3)–(4). This Court may award declaratory relief under 28 U.S.C. §§2201 and 2202 and attorney's fees and costs under 42 U.S.C. §1988.

6. Venue is proper in the Fort Worth Division of the Northern District of Texas under 28 U.S.C. §1391(b) because both Defendants reside in this District and Division and all events or omissions giving rise to Plaintiff's claims occurred in Tarrant County, Texas.

## III.
## PARTIES

7. Plaintiff Lon Burnam is a citizen of Texas and a resident of Tarrant County. He served in the Texas House of Representatives from 1997 through 2015 and continues to participate in civic affairs and attend or seek to attend Tarrant County Commissioners Court meetings.

8. Defendant Tim O'Hare is the elected Tarrant County Judge and the presiding officer of the Tarrant County Commissioners Court. He is sued in his individual capacity. At all relevant times, O'Hare acted under color of state law and used authority derived from his public office. He may be served at the Tarrant County Administration Building, 100 East Weatherford Street, Fort Worth, Texas 76196, or wherever he may be found.

9. Defendant Tarrant County, Texas is a political subdivision of the State of Texas and a local governmental entity subject to suit under 42 U.S.C. §1983. The County may be served through its County Judge at the Tarrant County Administration Building, 100 East Weatherford Street, Fort Worth, Texas 76196.

## IV.
## GOVERNING CONSTITUTIONAL AND STATUTORY DUTIES

10. The First Amendment protects speech concerning public affairs and criticism of governmental officials. Government may not suppress protected expression because it finds the speaker's viewpoint critical, offensive, provocative, or personally disagreeable.

11. The public-comment portion of the Commissioners Court meeting constitutes at least a limited public forum. In *Fairchild v. Liberty Independent School District*, the Fifth Circuit held that a school-board comment session opened for a limited time and a limited range of subjects was a limited public forum. 597 F.3d 747, 758–60 (5th Cir. 2010). In such a forum, restrictions on

speech must be reasonable in light of the forum's purpose and may not discriminate on the basis of viewpoint. *Id.*; *Heaney v. Roberts*, 846 F.3d 795, 801–03 (5th Cir. 2017).

12. Texas Government Code §551.007 requires the Commissioners Court to allow a member of the public who desires to address an open-meeting agenda item to do so before or during consideration of that item. Although the Court may adopt reasonable rules governing public comments, it may not prohibit public criticism of the governmental body or its acts, omissions, policies, procedures, programs, or services, except criticism otherwise prohibited by law. TEX. GOV'T CODE §551.007(b), (c), (e).

13. Reasonable and viewpoint-neutral rules addressing an actual disruption remain permissible. The existence of decorum rules, however, does not authorize selective, retaliatory, or pretextual enforcement against criticism of the presiding official.

## V.
## FACTUAL BACKGROUND

### A. July 2024 Removal and Trespass Warning

14. On July 2, 2024, Plaintiff attended a regular Tarrant County Commissioners Court meeting in the G.K. Maenius Administration Building. During the meeting, Plaintiff observed O'Hare cut off Commissioner Alisa Simmons while she questioned County staff, strike the gavel, and declare her out of order.

15. After the public portion of the meeting, Plaintiff approached O'Hare and briefly criticized O'Hare's treatment of Commissioner Simmons. Plaintiff did not threaten O'Hare, touch him, obstruct an exit, or engage in violence. After approximately two or three sentences, O'Hare directed Plaintiff to leave the meeting area.

16. On or about July 9, 2024, Tarrant County Sheriff's deputies came to Plaintiff's home and delivered a criminal-trespass warning concerning County property. The warning

identified O'Hare as the person who had warned Plaintiff. Its duration and scope were not adequately explained, and Plaintiff was not informed of any neutral procedure through which he could obtain prompt review.

17. Plaintiff reasonably understood the warning to threaten arrest if he returned to the covered County property. It deterred him from attending and speaking at later Commissioners Court meetings. Plaintiff understood that the warning resulted from his criticism of O'Hare, not from any threat, violence, or obstruction.

18. The July 2024 events are alleged as evidence of motive, intent, notice, municipal custom, and the relationship between Plaintiff's criticism and subsequent exclusion. Plaintiff does not rely on those events as separate, independently timely claims for damages.

**B. The August 4, 2026 Meeting and Chamber-Wide Expulsion**

19. On August 4, 2026, Plaintiff attended a regular Commissioners Court meeting at the Administration Building. The posted agenda invited members of the public to address the Court, stated that the courtroom would be open to the public, and included proposed Election Day and early voting locations for the November 3, 2026, election.

20. Hundreds of people attended, and the great majority of speakers opposed reducing voting locations. O'Hare repeatedly admonished attendees against applause and audible reactions and recessed the meeting more than once.

21. After a speaker criticized the Court by comparing it to Russia and audience members applauded, O'Hare ordered deputies to "clear the entire chambers now." O'Hare then stated: "I told you how it was going to go, so we're in recess until chambers are clear."

22. Deputies removed the public from the courtroom. The blanket expulsion removed silent and nondisruptive attendees along with persons alleged to have reacted. O'Hare did not first identify or direct the removal of only the persons whose conduct he considered disruptive.

23. After the recess, the County admitted registered speakers one at a time when called. Persons who completed their remarks were permitted to remain, and the audience gradually repopulated. O'Hare stated that he hoped no one else would be arrested and that whether the meeting remained peaceful and orderly would be "up to the people that are coming into the room."

**C. Mego's Removal and Plaintiff's Recognized Speaking Turn**

24. Earlier during the resumed public-comment period, Base Mego was admitted and recognized to speak. Plaintiff understood that Mego is autistic, and Mego stated during the meeting that he had previously obtained an approved reasonable accommodation relating to his manner of handling the microphone while speaking.

25. Mego lifted the microphone. O'Hare objected and caused him to be removed. Plaintiff believed Mego was being treated unfairly and decided that, when called, he would express support for Mego and protest O'Hare's treatment of him.

26. Approximately fourteen minutes later, Plaintiff was called from the registered-speaker list as an opponent of the voting-site proposal. This was Plaintiff's recognized public-comment turn on the pending agenda item.

27. Plaintiff began speaking within his allotted time. While continuing that same recognized turn, he intentionally lifted the microphone and turned partly toward members of the public who had been permitted to return or remain. He did so to express solidarity with Mego and to protest O'Hare's treatment of him.

28. Plaintiff did not damage the microphone, threaten anyone, strike anyone, block the proceedings, attempt to obtain a second speaking turn, or prevent another speaker from being heard.

29. O'Hare instructed Plaintiff to "Set the microphone down." Plaintiff did not set it down and continued speaking. O'Hare then ordered: "Please remove him…We will go into recess because you're disrupting the meeting again."

30. O'Hare gave no warning that Plaintiff's allotted time had expired, and Plaintiff had not completed his recognized speaking turn. O'Hare's stated disruption rationale was pretextual or grossly disproportionate to Plaintiff's conduct. Plaintiff was criticizing O'Hare's treatment of another speaker, opposing the proposed reduction in voting locations, and expressing a viewpoint with which O'Hare disagreed.

**D. Plaintiff's Physical Removal and Arrest**

31. Sheriff's deputies approached Plaintiff to execute O'Hare's removal order. Plaintiff did not strike, kick, or threaten them. He refused to leave voluntarily and went limp on the floor as an act of nonviolent resistance.

32. Deputies told Plaintiff he was under arrest, and four deputies carried him from the courtroom by his arms and legs. Plaintiff was booked for an alleged Class B misdemeanor under Texas Penal Code §42.05 and released at approximately midnight.

33. Plaintiff does not presently allege that O'Hare expressly ordered his arrest or independently directed the deputies to file a criminal charge. O'Hare did, however, terminate Plaintiff's protected speaking turn and issue the removal order that immediately preceded the physical removal and arrest.

34. O'Hare's order was captured on the County's official video. The recording also depicts the earlier clearing of the chamber, the controlled readmission process, Mego's appearance, and the sequence immediately preceding Plaintiff's removal.[1]

**E. The August 10, 2026, Restriction Letter**

35. On or about August 10, 2026, Plaintiff received a three-page letter captioned "Restriction of Access to Tarrant County Commissioners Court Meetings," bearing reference number 2026-09679.

36. The letter states that the Tarrant County Sheriff's Office issued Plaintiff a criminal-trespass warning for the Administration Building on August 4, 2026, pursuant to the Commissioners Court's Rules of Decorum. It expressly identifies O'Hare's removal order as the event giving rise to the warning and relies upon the July 2024 incident as evidence of what it characterizes as Plaintiff's "pattern of continued disruptive actions."

37. The letter asserts that Plaintiff's allotted speaking time had expired before O'Hare ordered him removed. Plaintiff denies that assertion. O'Hare ordered him removed during his recognized public-comment turn, before any time-expiration warning and before Plaintiff had completed his remarks.

38. The letter prohibits Plaintiff from attending Commissioners Court meetings and from entering the Administration Building while a Commissioners Court meeting is occurring or scheduled to occur. It describes the restrictions as lasting 180 days but separately identifies February 12, 2027, as their expiration date, creating an apparent inconsistency concerning their duration.

---

[1] *See* https://www.youtube.com/watch?v=kc7WA_VNrxI.

39. Even for unrelated County business, the letter requires Plaintiff to provide at least twenty-four hours' advance notice, disclose the purpose and anticipated duration of his visit, obtain the Sheriff's Office's approval, and remain continuously accompanied by a deputy. It threatens additional restrictions if the Sheriff's Office considers his governmental business frivolous, insufficiently legitimate, or a pretext for entering a Commissioners Court meeting.

40. The letter permits an administrative appeal within thirty days and states that a timely appeal stays the warning pending resolution. Absent a stay, rescission, or other relief, the warning is immediately effective. The warning thus converted O'Hare's August 4 removal order into a prospective exclusion from future public meetings and a continuing restriction on Plaintiff's access to County government.

41. The termination of Plaintiff's speaking turn, his public removal and arrest, and the threat of future arrest under the warning have chilled and deterred Plaintiff from attending Commissioners Court meetings and criticizing O'Hare and the County.

**F. Similar Enforcement Against Critical Speakers and Notice to Defendants**

42. On August 4, 2026, Efrin 'EJ' Carrion also addressed the Commissioners Court during his allotted public-comment time. Carrion criticized the proposed reduction in voting locations and used profanity while criticizing the proposal and members of the Court. O'Hare characterized Carrion's conduct as disruptive and directed deputies to remove him, although contemporaneous reporting states that Carrion was already voluntarily leaving.

43. Approximately one week later, Carrion was arrested on a Tarrant County warrant arising from his August 4 public-comment appearance. Plaintiff does not presently allege that O'Hare personally applied for, obtained, or directed the issuance of that warrant. The incident is relevant because O'Hare personally characterized Carrion's critical speech as a disruption and

ordered his removal, after which Carrion was subjected to criminal process arising from the same appearance.

44. Before August 4, 2026, Defendants had actual notice that substantially similar enforcement had been challenged as unconstitutional. C.J. Grisham had filed a federal action alleging that O'Hare used the County's Rules of Decorum and his authority as presiding officer to suppress protected criticism. *See Grisham v. O'Hare*, No. 4:25-cv-00716-Y (N.D. Tex.).

45. Mark Kirkland likewise filed *Kirkland v. O'Hare*, No. 4:25-cv-01412-P (N.D. Tex.), alleging that O'Hare terminated his recognized public-comment turn after Kirkland criticized him. That action was dismissed on procedural grounds and was refiled as *Kirkland v. O'Hare*, No. 4:26-cv-00015-P (N.D. Tex.). The refiled action was subsequently stayed pending the *Grisham* appeal.

46. The August 4, 2026, Commissioners Court agenda expressly listed the *Kirkland* litigation for legal consultation in executive session. O'Hare and the County therefore had actual notice, before the conduct at issue here, that substantially similar uses of meeting authority against critical speakers had been challenged as violating the First Amendment.

47. The recurring sequence—terminating critical speech, ordering removal, imposing trespass restrictions, and initiating criminal process—would deter a person of ordinary firmness from attending public meetings or criticizing O'Hare and the Commissioners Court.

## COUNT I

**42 U.S.C. §1983—FIRST AMENDMENT**
**Viewpoint Discrimination and Retaliation**
**Against O'Hare Individually**

48. Plaintiff incorporates by reference paragraphs 1 through 47 as though fully set forth herein.

49. At all relevant times, O'Hare acted under color of state law in his capacity as Tarrant County Judge and presiding officer of the Commissioners Court.

50. Plaintiff's comments concerning voting access, O'Hare's administration of the meeting, and O'Hare's treatment and removal of another public speaker addressed matters of public concern and were protected by the First Amendment.

51. Plaintiff was a registered and recognized speaker, remained within his allotted time, continued to address the subject matter of the pending agenda item, and posed no threat or material obstruction.

52. O'Hare's decision to terminate Plaintiff's recognized speaking turn and order his removal was caused by, or substantially motivated by, Plaintiff's criticism of O'Hare, opposition to the proposed reduction in voting locations, and support for another removed speaker.

53. Termination of Plaintiff's speaking turn, public removal from the chamber, and the prospective meeting exclusion directly resulting from O'Hare's order were adverse actions that would deter a person of ordinary firmness from continuing to criticize O'Hare or participate in Commissioners Court meetings.

54. The causal connection between O'Hare's order and the later exclusion is express rather than speculative. The August 10 letter identifies O'Hare's August 4 removal order as the

event giving rise to the criminal-trespass warning and uses O'Hare's characterization of Plaintiff's conduct to justify prospective restrictions.

55. O'Hare's conduct violated Plaintiff's First Amendment rights to speak in a limited public forum without viewpoint discrimination and to be free from official retaliation for protected criticism.

56. Those rights were clearly established on August 4, 2026. In *Heaney*, the Fifth Circuit considered an interlocutory appeal from the denial of qualified immunity to the official presiding over a public meeting. Because the registered speaker was addressing an approved topic and remained within his allotted time, the First Amendment claim turned on whether the presiding official silenced and ejected him because of his viewpoint. The Fifth Circuit agreed that, assuming the official acted with that improper motive, the official violated the speaker's clearly established First Amendment right to be free from viewpoint discrimination in a limited public forum and acted objectively unreasonably. *Heaney*, 846 F.3d at 801–03. The court dismissed the interlocutory appeal because the official's motive presented a disputed issue of fact. *Id.* at 802–03. In *Biggers v. Massingill*, the Fifth Circuit subsequently confirmed that these principles apply when a presiding county judge invokes a decorum rule as a pretext for viewpoint discrimination. The court held that allegations that a speaker was silenced because the presiding official disagreed with his criticism, rather than because he was disruptive, plainly alleged a "textbook violation of the First Amendment." No. 23-11023, 2025 U.S. App. LEXIS 2901, at *4 (5th Cir. Feb. 7, 2025) (per curiam). The court further held that, if proved, the alleged use of a decorum rule as a mere pretext to silence the speaker's views would clearly violate the First Amendment. *Id.* at *5. It also rejected the official's competing characterization of the speaker's conduct as disruptive at the pleading stage because that characterization contradicted the complaint's allegations and presented a fact-

dependent question unsuitable for resolution on a motion to dismiss. *Id.* at *4 n.2. *Fairchild* likewise established that restrictions in a limited public forum must be viewpoint neutral and reasonable in light of the forum's purpose. 597 F.3d at 758–60.

57. *Heaney* provides particularized guidance applicable here. Heaney registered for a five-minute public-comment turn concerning the legality of council members accepting campaign contributions from contractors receiving no-bid contracts. After yielding temporarily to the parish attorney, Heaney resumed his remarks and challenged the attorney's legal opinion. Although Heaney remained on the approved subject and within his allotted time, the presiding official characterized him as "hostile," terminated his remarks, and ordered him removed. *Heaney*, 846 F.3d at 798–99, 802–03. Here, Plaintiff likewise was a registered and recognized speaker, remained on the pending agenda item, had time remaining, and was ordered removed while opposing the proposed reduction in voting locations and protesting O'Hare's treatment of another speaker.

58. A reasonable official would have understood that Plaintiff's brief, nonthreatening handling of the microphone could be addressed through a reasonable, viewpoint-neutral manner restriction, but could not be used as a pretext to suppress criticism, terminate Plaintiff's allotted speaking opportunity, and initiate his exclusion from future meetings.

59. O'Hare's response was objectively unreasonable in light of Plaintiff's protected subject matter, remaining time, lack of any genuine safety threat or material interference, the gross disproportionality of removal, the earlier blanket clearing of nondisruptive attendees, O'Hare's prior treatment of Plaintiff, his repeated use of removal authority against critical speakers, and his actual notice of the Grisham and Kirkland constitutional challenges.

60. As a direct and proximate result, Plaintiff lost his opportunity to complete his remarks, was publicly removed, was deterred and prevented from attending later meetings, and suffered humiliation, emotional distress, loss of constitutional rights, and other compensable injury.

61. O'Hare acted intentionally, maliciously, or with reckless or callous indifference to Plaintiff's federally protected rights, entitling Plaintiff to compensatory and nominal damages and, to the extent proved, punitive damages against O'Hare individually.

## COUNT II

**42 U.S.C. §1983—MUNICIPAL LIABILITY UNDER *MONELL***
**Against Tarrant County, Texas**

62. Plaintiff incorporates by reference paragraphs 1 through 61 as though fully set forth herein.

63. Plaintiff does not seek to impose liability merely because Tarrant County employed O'Hare or the deputies involved. A local government may not be held liable under §1983 solely because it employs a constitutional tortfeasor. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 694 (1978). Rather, the Tarrant County Commissioners Court, acting as the County's governing body and final policymaking authority concerning the rules governing its meetings, adopted and maintained written Rules of Procedure, Conduct, and Decorum governing public comments and conduct in the Commissioners Courtroom.

64. The County's rules broadly restrict personal attacks, 'impertinent' remarks, profanity, expressive audience reactions, and conduct characterized by the presiding officer as disruptive. The rules further permit 'orderly clapping' during designated ceremonial portions of the agenda while prohibiting expressions of approval or disapproval during public comments.

65. The Commissioners Court vested its presiding officer with immediate and effectively final authority to interpret and enforce those restrictions during public meetings, including authority to terminate speaking turns, order attendees removed, clear the chamber, and refer alleged violations for further enforcement.

66. Under *Monell*, a local government is responsible under §1983 when the execution of a governmental policy or custom—whether made by its lawmakers or by an official whose edicts or acts may fairly be said to represent official policy—inflicts the constitutional injury. *Monell*, 436 U.S. at 694. The Rules of Procedure, Conduct, and Decorum formally adopted by the Commissioners Court constituted official County policy. Alternatively, Plaintiff alleges that the repeated selective use of those rules to silence or remove speakers critical of O'Hare constituted a persistent and widespread practice sufficiently common and well settled to represent County custom.

67. Relevant instances include Plaintiff's July 2024 removal and resulting trespass warning; the incidents alleged by Grisham in January 2025; the incident alleged by Kirkland in December 2025; the chamber-wide expulsion of silent and nondisruptive attendees on August 4, 2026; and O'Hare's treatment of Mego, Plaintiff, and Carrion during that meeting.

68. These were not merely isolated acts by subordinate employees. They included decisions by the official whom the Commissioners Court placed in charge of enforcing its meeting policy, the chamber-wide implementation of his orders, and the County's later imposition of trespass restrictions expressly predicated on his removal order and the County's Rules of Decorum.

69. The *Grisham* and *Kirkland* litigation, the listing of the *Kirkland* matter on the August 4 executive-session agenda, and the prior July 2024 warning gave the County actual or constructive notice that its meeting rules and enforcement practices were being used in a manner

alleged to suppress protected criticism. Despite that notice, the County did not adopt adequate viewpoint-neutral standards, safeguards, training, supervision, or prompt review procedures sufficient to prevent decorum and trespass authority from being used to suppress criticism or exclude nondisruptive speakers.

70. The County implemented and ratified the consequences of O'Hare's August 4 order. The August 10 restriction letter issued in the name of the Tarrant County Sheriff's Office expressly relied upon O'Hare's removal order and the County's Rules of Decorum to prohibit Plaintiff from attending future meetings and to restrict his entry into the Administration Building.

71. The County's formally adopted policies and established customs were moving forces behind the termination of Plaintiff's protected speech, his removal from the meeting, and his exclusion from subsequent meetings. See *Monell*, 436 U.S. at 694. The policies and customs were unconstitutional as applied to Plaintiff because they permitted or caused protected criticism and expressive conduct to be treated as disruption and imposed exclusionary consequences grossly disproportionate to any legitimate interest in maintaining an orderly meeting.

72. Tarrant County is not entitled to qualified immunity from liability under §1983. *Owen v. City of Independence*, 445 U.S. 622, 638 (1980). As a direct and proximate result of the County's policies and customs, Plaintiff suffered the injuries and damages described above.

## VI.
## DECLARATORY AND INJUNCTIVE RELIEF

73. An actual controversy exists concerning whether Defendants may terminate Plaintiff's public comments, remove him from meetings, or exclude him from County property based on protected criticism and expressive conduct that causes no material disruption.

74. Plaintiff has suffered completed constitutional injuries and continues to face adverse legal consequences, deterrence, and a credible threat that the same policies and practices

will be applied if he returns to criticize O'Hare or participate in future Commissioners Court meetings.

75. Plaintiff seeks a declaration that Defendants violated the First and Fourteenth Amendments by terminating his recognized speaking turn, removing him based on protected criticism, and using that removal as the basis for prospective meeting restrictions.

76. To the extent the August 2026 warning remains operative or continues to produce legal consequences, Plaintiff seeks appropriate injunctive relief prohibiting Defendants from enforcing it to bar him from Commissioners Court meetings or County property based upon the August 4 incident.

77. Plaintiff further seeks prospective relief prohibiting Defendants from terminating his future public comments or excluding him because of his viewpoint, while preserving the County's lawful authority to enforce reasonable and viewpoint-neutral time, place, and manner restrictions addressing actual material disruption.

## VII.
## APPLICATION FOR PRELIMINARY INJUNCTION

78. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein. Plaintiff seeks preliminary injunctive relief under Federal Rule of Civil Procedure 65 prohibiting enforcement of the August 2026 criminal-trespass warning and related access restrictions during the pendency of this action.

79. The August 2026 warning presently prohibits Plaintiff from attending meetings of the Tarrant County Commissioners Court and prohibits him from entering the G.K. Maenius Administration Building while a Commissioners Court meeting is occurring or scheduled to occur. Even when Plaintiff seeks access to the building for unrelated County business, the warning requires advance notice, disclosure of the purpose and anticipated duration of his visit, approval

from the Sheriff's Office, and continuous accompaniment by a deputy. The warning expressly relies upon O'Hare's August 4, 2026, removal order and the County's Rules of Decorum as the basis for those continuing restrictions.

80. Plaintiff is substantially likely to succeed on the merits of his First Amendment claims. He was a registered and recognized public speaker addressing a matter of public concern during the public-comment portion of an open governmental meeting. He alleges that he remained within his allotted time, posed no genuine threat or material obstruction, and was ordered removed while criticizing O'Hare's conduct and treatment of another speaker. The Fifth Circuit has clearly established that a presiding official may not use a decorum rule as a pretext for viewpoint discrimination against a recognized speaker in a limited public forum. See *Heaney v. Roberts*, 846 F.3d 795, 801–03 (5th Cir. 2017); *Biggers v. Massingill*, No. 23-11023, 2025 U.S. App. LEXIS 2901, at *4–5 (5th Cir. Feb. 7, 2025) (per curiam).

81. Plaintiff also faces a substantial threat of irreparable injury absent preliminary relief. The warning prospectively excludes him from meetings at which members of the public may observe, address, and criticize their elected County officials and threatens arrest if he enters County property contrary to its restrictions. The continuing exclusion therefore burdens Plaintiff's exercise of First Amendment rights each time he wishes to attend or speak at a Commissioners Court meeting during the warning period. Loss of First Amendment freedoms, even for brief periods, constitutes irreparable injury that cannot be adequately remedied by an award of damages after final judgment.

82. The balance of equities favors preliminary relief. Plaintiff seeks only restoration of the access available to other members of the public, subject to the same lawful, reasonable, and viewpoint-neutral time, place, and manner restrictions applicable to everyone else. An injunction

would not prevent Defendants or appropriate County officials from responding to actual threats, violence, obstruction, or material disruption. It would prevent only enforcement of the challenged trespass warning as a continuing consequence of the August 4 incident.

83. Preliminary relief also serves the public interest. The public has a strong interest in the protection of constitutional freedoms, open governmental proceedings, and the ability of citizens to observe and criticize their elected officials. Because Tarrant County is a governmental defendant, the balance-of-harms and public-interest considerations substantially overlap. The County has no legitimate interest in enforcing a restriction that violates the First Amendment. The Fifth Circuit presently applies the familiar four-factor test requiring likelihood of success, substantial threat of irreparable injury, favorable balance of hardships, and consistency with the public interest.

84. Plaintiff therefore requests that, after notice and hearing, the Court enter a preliminary injunction prohibiting Tarrant County, and its officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the August 2026 criminal-trespass warning or related access restrictions to prevent Plaintiff from attending meetings of the Tarrant County Commissioners Court or otherwise entering County property on the basis of the August 4, 2026 incident, pending final judgment in this action.

85. Plaintiff further requests that the preliminary injunction expressly preserve the lawful authority of County officials to enforce generally applicable, reasonable, and viewpoint-neutral rules directed to actual threats, violence, obstruction, or material disruption, provided that such rules are not enforced against Plaintiff because of his viewpoint, criticism of County officials, or protected expressive conduct.

86. Plaintiff requests that the Court waive security under Federal Rule of Civil Procedure 65(c), or alternatively require only nominal security, because the requested injunction protects constitutional rights, imposes no cognizable monetary loss upon Defendants, and merely prevents enforcement of the challenged restriction pending adjudication of the merits.

## VIII. DAMAGES

87. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of protected speech and access to government, public humiliation, emotional distress, chilling and deterrence of his future participation in County government, and other compensable injuries.

88. Plaintiff seeks compensatory damages in an amount to be determined by the jury, nominal damages for the completed violation of his constitutional rights, and punitive damages against O'Hare individually to the extent permitted by law. Plaintiff does not seek punitive damages against Tarrant County.

## IX. CONDITIONS PRECEDENT

89. All conditions precedent to Plaintiff's claims for relief have occurred, have been performed, or have been excused. No exhaustion of state administrative remedies is required as a prerequisite to an action under 42 U.S.C. §1983.

## X. JURY DEMAND

90. Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

## XI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Lon Burnam respectfully requests that Defendants be summoned to appear and answer and that, after trial, the Court:

a. Enter judgment declaring that the termination of Plaintiff's recognized public-comment turn, his removal based on protected criticism, and the resulting meeting restrictions violated the First and Fourteenth Amendments;

b. Declare the County's Rules of Procedure, Conduct, and Decorum unconstitutional as applied to Plaintiff insofar as they were used to suppress protected criticism or impose exclusion without an actual material disruption;

c. Upon appropriate motion and after such notice and hearing as Rule 65 requires, enter a preliminary injunction prohibiting Tarrant County, its officers, agents, servants, employees, attorneys, and persons acting in active concert or participation with them who receive actual notice of the injunction, from enforcing the August 2026 criminal-trespass warning or related access restrictions to prevent Plaintiff from attending Commissioners Court meetings or otherwise entering County property on the basis of the August 4, 2026 incident during the pendency of this action;

d. Upon final judgment, permanently enjoin enforcement of the August 2026 criminal-trespass warning and related access restrictions to the extent they are based upon Plaintiff's protected speech or expressive conduct arising from the August 4, 2026 incident;

e. Award Plaintiff compensatory damages in an amount determined by the jury;

f. Award Plaintiff nominal damages;

g. Award punitive damages against O'Hare individually to the extent permitted by law;

h. Award Plaintiff reasonable attorney's fees and costs under 42 U.S.C. §1988;

i. Award pre-judgment and post-judgment interest as allowed by law; and

j. Award Plaintiff all other legal and equitable relief to which he is entitled.

Respectfully submitted,

/s/ *Stephen C. Maxwell*
**STEPHEN C. MAXWELL**
State Bar No. 13258500
**DANIEL P. SULLIVAN**
State Bar No. 24054465
STEPHEN C. MAXWELL, P.C.
1300 Summit Avenue, Suite 650
Fort Worth, Texas 76102
Telephone: (817) 276-6000
Facsimile: (817) 276-6001

/s/ *Art Brender*
**ART BRENDER**
State Bar No. 02954500
eserve@brenderlawfirm.com
THE BRENDER LAW FIRM
600 8th Ave.
Fort Worth, Texas 76104
Telephone: (817) 334-0171
Facsimile: (8 I 7) 334-0274

/s/ *Jason C.N. Smith*
**JASON C.N. SMITH**
State Bar No. 00784999
jasons@letsgotocourt.com
LAW OFFICES OF JASON SMITH
612 8th Ave
Fort Worth, TX 76104
Telephone: 817-334-0880
Facsimile: 817-334-0898
**COUNSEL FOR RELATOR LON BURNAM**